United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MICHAEL PATRICK McCLISH,

        Petitioner,

  v.

RANDY GROUNDS, Warden,

        Respondent.

_____/

**Nos. C 11-01104 RS**

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

This is a federal habeas corpus action filed by represented state prisoner Michael Patrick McClish pursuant to 28 U.S.C. § 2254. Petitioner challenges his sentence in four claims for relief: (1) the preclusion of evidence of complaining witness's prior false accusations of rape and assault violated petitioner's right to impeach the credibility of the adverse witness and present a defense; (2) the admission of propensity evidence consisting of uncharged sexual assaults violated due process; (3) the admission of evidence of misdemeanor sexual battery and indecent exposure as propensity evidence resulted in a fundamentally unfair trial; and (4) insufficient evidence was presented to

support the jury's finding of fact of deadly weapon use, on which the one-strike life sentence enhancement was predicated. For the reasons set forth below, the petition will be denied.

## II. BACKGROUND

Petitioner was charged by information with making criminal threats, felony assault, two counts of forcible sodomy, and forcible rape. One strike circumstances were alleged in connection with counts three though five for use of a deadly weapon and for infliction of great bodily injury in the commission of the alleged forcible sodomy and rape. On July 6, 2007, a jury returned a verdict of guilt on all five counts, with true findings in connection with counts three through five of deadly weapon use, but not true findings of great bodily injury. Petitioner was sentenced to an aggregate term of 18 years and three months to life. The judgment was affirmed by the California Court of Appeal on September 11, 2009 and petitions for rehearing and for review were denied. All four issues raised in this petition were presented to the California Court of Appeal and the California Supreme Court.

At the time of trial, petitioner was a thirty-eight-year old male employed by Ben Lomond Market. He and his wife had three children. The complaining witness, Brandi Johnson, was a thirty-year old woman who met petitioner when she began working as a checker at the Ben Lomond Market in 2004. The two developed a friendship that progressed into a sexual relationship. The two would rendezvous at a highway turn-out they referred to as "up-top" two to three times a week. Their sexual relations included vaginal, oral, and anal sex.

Petitioner introduced Johnson to his wife, and the two women became friends, despite Johnson's continuing sexual relationship with petitioner. In June of 2005, Johnson took a new job at Liberty Bank. One evening on her way home from work she called petitioner's home, saying something was wrong with her car. Petitioner's wife answered and warned Johnson that he was in a bad mood. Johnson heard petitioner's wife say he shouldn't go anywhere because he'd been drinking too much, but then heard petitioner say he'd be right there. When petitioner arrived he was angry and demanded to know who she had been "fucking." He told her to meet him at up-top, where he showed her a blemish near his pubic area. Johnson testified that he then pushed Johnson's

face into the seat of his truck and pinned her there. She felt a cold blade against the back of her neck, and heard him announce he had a hatchet and she had to tell him the truth. Eventually petitioner released Johnson, but then came up behind her and held her in such a way as to suggest he would let her fall off the steep drop-off. After petitioner released her, he pushed her face onto the hood of her car, pulled down his pants, and shoved his penis into her anus. He repeatedly stated, "Tell me the truth." Johnson testified she begged him to stop, but he didn't. Johnson said she eventually stopped struggling, afraid he might kill her. Finally, he allowed her to get in her car and drive home.

Within a week and a half of this incident, the two had resumed consensual sexual relations. At some point, Johnson had a more detailed discussion with him about the incident, which he explained was no big deal, and simply a demonstration of what predatory men might do if she were careless about her safety. Johnson related the event to her two sisters, who told their parents. Their father, a former sergeant, told them to call the Sheriff. But when they did so, Johnson refused to make any statement. In March or April of 2006, the manager of Ben Lomond Market confronted petitioner with photos of the two kissing, and the relationship began tapering off. The police contacted Johnson in September 2006 regarding the incident.

The trial court admitted evidence of four uncharged sexual acts. The first occurred in the 1980s, in which petitioner pinned a classmate down on his bed, despite her protestations. The second occurred with an ex-girlfriend who testified that petitioner would frequently warn her that if she was ever unfaithful, he would kill her. Petitioner would ask whether she was afraid of him, and then pin her down using all his weight. When she asked him about these incidents, petitioner admitted he liked it that she cried and tried to get away, and her unwillingness was sexually exciting to him. Despite these incidents, the two would resume having consensual sex within days. The third involved a co-worker at Ben Lomond Market who testified that petitioner asked her to lunch and offered to give her a tour of his home. In the bedroom, he pinned her to the bed. She told him to get off, and he asked whether she was scared. Eventually, she said, he released her and they never spent time alone again. The fourth uncharged act was with another co-worker at Ben Lomond

Market. She testified that petitioner would expose his penis to her or point to his erection and make inappropriate sexual comments while at work. He would also touch her inappropriately without her consent. At some point in 2005, she visited him at his wood-cutting job where he tried to kiss her. When she pushed him back, she said he became aggressive and forced her back on the table. After holding her five to ten seconds, however, he released her and became pleasant again.

A doctor testified as an expert on "intimate partner battery" to explain why it is not uncommon for the abused person to resume a loving, sexual relationship shortly after a sexual assault. She further testified that it is extremely uncommon for a victim to report the abuse. Finally, she testified about the theory of traumatic memory, in which information containing a high degree of emotional content gets fragmented.

The defense presented evidence that there is no special way to assess the factual truth of an event or to judge the credibility of others. Petitioner's wife, who was planning to divorce him, testified he was not domineering or controlling over her, and never talked about rape fantasies. Petitioner testified that he regretted his relationship with Johnson, and that towards the end, they began arguing over the nature of the relationship. He then addressed his relationships with the women of the four prior uncharged sexual acts. The defense also presented "sound" evidence , in which several people who lived near "up-top" testified they could not remember hearing any commotion or screaming during the times in question, despite tests indicating any such protestations would have been audible.

### III. LEGAL STANDARD

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S .C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of

4

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409. An unreasonable application of federal law differs from an incorrect application of federal law. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Thus, habeas corpus is "not a substitute for ordinary error correction through appeal." *Id.* at 786. Instead, the "highly deferential standard" imposed by the statute, "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

## IV. DISCUSSION

*A. Preclusion of Johnson's prior false accusations of rape and assault*

Petitioner contends his Sixth Amendment right to confront and cross-examine a key prosecution witness was violated in this case, as he was prevented from offering proof that the complaining witness had made prior false accusations of sexual and other assault. Specifically, counsel's declaration before the trial court stated that Johnson had previously told two of her friends that she had been raped while she was blacked out, that she was forced to have sex with Michael Lisle who would testify they were in a dating relationship at the time, and that she filed a false police report for physical assault against Michael Lisle. Petitioner argues each of the allegedly false

accusations were probative of Johnson's credibility as, similar to her relationship with Lisle, her relationship with petitioner was a tumultuous one, which could lead to similarly false accusations.

The trial court denied petitioner's motion *in limine* due to the uncertainty behind the allegations, finding it was not clear she had made inconsistent statements. This decision was affirmed by the California Court of Appeal, finding the evidence supported the trial court's conclusion that any prior false allegation was uncertain. The appellate court further found the prospect of a "mini-trial" on the issues to be concerning, as the parties would need to delve into the nature of the couple's relationship, and it would be impossible to say which version of events actually occurred, leading to speculation and potential confusion of the issues. Thus, it concluded, the trial court did not act irrationally in deciding against the admission of such evidence. Finally, the appellate court found no constitutional violation, as the "right to present exculpatory evidence" has "essential limitations," *Taylor v. Illinois*, 484 U.S. 400, 410 (1988), and the "[e]xclusion of impeaching evidence on collateral matters that has only slight probative value on the issue of veracity does not infringe on the defendant's right of confrontation." *People v. Greenberger*, 58 Cal.App.4th 298, 350 (1997).

The California Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court law. There were substantial discrepancies between each party's proffered evidence on issues only minimally relevant to the charged offense, leading to the realistic prospect of mini-trials. The Constitution permits the exclusion of evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues. *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (citations omitted). Thus, under *Holmes*, the state court's concern was reasonable. Moreover, even if the evidence should have been admitted, any error would have been harmless, as the strength of the prosecution's case was great. Petitioner has not shown prejudice resulting from the exclusion of this impeachment evidence, as he has provided no evidence to indicate its exclusion had a "substantial and injurious effect or influence on the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

B. *Admission of propensity evidence*

Petitioner asserts the admission of evidence of uncharged sexual conduct with four other women as propensity evidence was a violation of due process. California Evidence Code § 1108 allows propensity evidence in a sexual assault case, so long as the uncharged crime would be a sexual offense and the probative value of the evidence is not substantially outweighed by its prejudicial effect. The People initially sought admission of sex offenses defendant had committed upon eleven other women. The trial court denied the motion, subject to a hearing with respect to four women, and concluded that, with respect to those four, the location, subject matter, and physical pain was similar enough to the charged conduct, and not so unduly prejudicial, as to be admissible under Section 1108. The trial court later instructed the jury that evidence had been presented that the defendant "committed the crimes of indecent exposure, sexual battery, assault with intent to commit rape and rape that were not charged in this case." It went on to instruct that the evidence may be considered "only if the People have proved by a preponderance of the evidence that the defendant in fact committed the […] uncharged offenses."

Petitioner insists this instruction was in error, as there was no evidence in the testimony to support violations of an offense listed in Evidence Code §1108(d)(1)(A), with respect to three of the four women who testified, as they were assaults, not sexual offenses. He argues that an assault with the intent of forcing one to admit a crush, and an assault with the intent to kiss are not sexual offenses, and asking whether one is scared does not even connote a sexual intent. Thus, he concludes, the foundational requirements of admissible propensity evidence were not met.

The Court of Appeal found the definition of sexual offense in Section 1108(d)(1)(E) simply requires that the defendant commit a "crime" that involves deriving sexual pleasure. It rejected defendant's argument that "deriving sexual pleasure" must be an element of the offense under *People v. Walker*, 139 Cal.App.4th 782 (2006), finding instead that the statute defines a sexual offense "as a crime that involves deriving sexual pleasure, etc.—not as a crime having the element of deriving sexual pleasure, etc.—." (citing *People v. Story*, 45 Cal.4th 1282 (2009)). It concluded, therefore, the trial court had correctly overruled defendant's foundational objections to the evidence.

7

Nos. C 11-01104 RS
ORDER DENYING HABEAS PETITION

On federal habeas review, the question is whether the admission of the challenged evidence was so prejudicial in the context of the trial as to render the conviction unfair, not whether the evidence was properly admitted under state evidentiary laws. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Failure to comply with state rules of evidence is neither a necessary nor sufficient basis for granting habeas relief. *See Jammal v. van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." *Id*. at 920 (emphasis in original). Petitioner cannot sustain his burden to show a violation of due process as the result of the admission of this evidence.

In all three situations, petitioner pinned each of the women down in situations that involved sexual overtones, even if they did not ultimately result in sexual acts. The manner in which petitioner assaulted each woman was sexual in nature, as he put each underneath his body with her hands over her head in a manner that suggested the encounter might result in rape. This evidence tended to suggest the petitioner acted in conformity with his prior conduct when he assaulted the victim in this case. Indeed, the evidence showed he pinned Johnson underneath his body against his truck, and then proceeded to rape her. The Ninth Circuit has held that, because the Supreme Court has reserved the question of whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' to show propensity to commit a charged crime, there is no clearly established Supreme Court authority prohibiting such use, thereby foreclosing habeas relief under 28 U.S.C. § 2254(d)(1). *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (citing *Estelle*, 502 U.S. at 75 n.5) (prior sex offenses); *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (prior crimes); *Alberni v. McDaniel*, 458 F.3d 860, 865-66 (9th Cir. 2006) (prior violent acts).

This evidence tended to support Johnson's allegations, and thus was probative of the victim's credibility and relevant to the central issue of whether or not petitioner raped and forcibly sodomized her. Additionally, the trial court properly weighed the evidence against its potential to cause prejudice and instructed the jury on the purpose of the evidence and the need to find the uncharged acts proven by a preponderance of the evidence. Moreover, the admission of this evidence could not have a substantial and injurious effect on the jury's verdict, as the relative

8

strength of the prosecution's case was great. Thus, under the circumstances, admitting such propensity evidence did not result in a violation of due process.

*C. Admission of evidence of misdemeanor sexual assault and indecent exposure*

Petitioner argues that, although sexual battery and indecent exposure qualify as sexual offenses under Evidence Code §1108, the probative value of this evidence was so low and the prejudicial impact so high, that its admission resulted in a violation of due process. Specifically, he asserts that the disproportion between the misdemeanors of grabbing breasts and buttocks in the workplace or indecent exposure in the ice box and the act of rape and sodomy charged in this case is so great that a conclusion of propensity simply is impossible.

The California Court of Appeal's decision finding the admission of these uncharged misdemeanors to be relatively benign was not contrary to, or an unreasonable application of, clearly established Supreme Court law. The testimony demonstrated petitioner's tendency to act in a sexually inappropriate way towards his co-workers, and thus was relevant to the victim's credibility regarding the offenses charged in the case. Moreover, given the strength of the prosecution's case as a whole, the admission of this evidence is unlikely to have had a substantial and injurious effect or influence on the jury's verdict. Accordingly, no violation of due process occurred.

*D. One-strike life sentence*

Petitioner was sentenced to three concurrent terms of fifteen-years-to-life for the conviction of one count of forcible rape and two counts of forcible sodomy based on the jury finding that "the defendant personally used a dangerous or deadly weapon, to wit, a hatchet" in the commission of the crimes "to be true." Petitioner contends the evidence was insufficient for the jury to find proof beyond a reasonable doubt to support this finding.

Petitioner argues that, when the term "use" is coupled with "in the commission of," a felony, the plain implication is that the weapon must be used with the purpose or intent to effect that felony. Petitioner argues there is no substantial evidence that the hatchet was employed with the intent to accomplish the subsequent sexual assault. Rather, the hatchet was intended to aid in the "intermediate" goal of obtaining a confession that Johnson had been seeing other men. He

concludes that the assault with the hatchet and the rape were equal means to intimidate Johnson into making this confession and that no rational trier of fact could conclude otherwise.

The California Court of Appeal, however, noted that the phrase "in the commission of" must be "broadly construed" under California law. *See People v. Masbruch*, 14 Cal.4th 1001, 1007 (1996). In looking at a "video" of the entire encounter, rather than a "snapshot" of the moments immediately preceding the sexual offense, the appellate court concluded the victim unquestionably knew that the hatchet was available to the defendant at all times, and that this knowledge aided the defendant by keeping her fearful and unresistant. On these facts, it determined a jury reasonably could find the fear created by the hatchet continued throughout the ordeal, supporting the jury's finding that a deadly weapon was used in the commission of the sex crimes.

Evidence is constitutionally sufficient to support a conviction when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The reviewing court must presume that the trier of fact resolved any conflicts in the evidence in favor of the prosecution, and must defer to that resolution. *Id.* at 326; *McDaniel v. Brown*, 558 U.S. 120, 133 (2010). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir. 1995).

The evidence presented showed petitioner threw Johnson down on the seat of his truck, grabbed a hatchet, and held it against her neck. Shortly thereafter, he forcibly sodomized and raped her. Little time passed between the holding of the hatchet blade against Johnson's neck and the commission of the forcible sex acts. The totality of this altercation raised a reasonable inference that the fear instilled by the initial use of the hatchet continued through and aided in the commission of the forcible sodomy and rape. Indeed, the California Supreme Court has held that "there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force" in order to find "use" of a dangerous weapon. *People v. Chambers*, 7 Cal. 3d 666, 672 (1972).

While petitioner argues that evidence of use with *intent* to commit a sexual offense is lacking, the commission of the crime itself, in such close proximity to his claimed "intermediate" purpose, supports an inference of intent. A jury reasonably could conclude the hatchet was for the purpose of, and aided in the commission of, the sex acts. Sufficient evidence thus supported the jury's finding that petitioner used a dangerous or deadly weapon, and the one-strike life sentence was therefore not contrary to law.

## V. CONCLUSION

For the foregoing reasons, McClish's petition for §2254 Habeas relief is hereby denied.

IT IS SO ORDERED.

Dated: 5/8/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE